In re GLADE SPRINGS, INC., Debtor.

Bankruptcy No. 3–83–01854.

United States Bankruptcy Court, E.D. Tennessee.

March 21, 1985.

---

Jenkins & Jenkins, Michael H. Fitzpatrick, Knoxville, Tenn., for debtor.

Bernstein, Susano, Stair & Cohen, L. Caesar Stair, III, Terri L. Tribble, Knoxville, Tenn., for claimant Chemical Bank.

Cadwalader, Wickersham & Taft, Murray Drabkin, Toni Emery, Washington, D.C., Walker & Walker, John A. Walker, Jr., Knoxville, Tenn., for D. Broward Craig.

## MEMORANDUM AND ORDER ON OBJECTION TO CLAIM NO. 57

CLIVE W. BARE, Bankruptcy Judge.

At issue is whether a confirming bank, U.C.C. § 5–103(f) (1977),[1] that honors a letter of credit is entitled to equitable subrogation to the rights of the issuer of the credit under a deed of trust executed to secure the issuer. The facts are stipulated.

### I

The debtor, Glade Springs, Inc., is a Delaware corporation. One hundred (100) percent of its stock is owned by D. Broward Craig as trustee for another bankruptcy estate.[2] Debtor owned and operated a resort and residential complex in West Virginia when it filed a voluntary chapter 11 petition on November 30, 1983. Previous thereto, on March 31, 1981, debtor executed and delivered its promissory note for $1,590,000 to the order of Kanawha Valley Bank, N.A. (Kanawha). The maturity date stated in the note, which required quarterly installment payments, is September 1, 1983.

---

1. A "confirming bank" is a bank which engages either that it will itself honor a credit already issued by another bank or that such a credit will be honored by the issuer or a third bank.

2. Craig is the successor trustee in the bankruptcy case of David A. Crabtree a/k/a West Knox-

ville Investment Company, Inc., Case No. 3–83–01116. Glade Springs listed a $4,000,000 claim by West Knoxville Investment Company in its schedules. The claim is partially secured by a second mortgage against the property subject to the first deed of trust at issue herein.

Also on March 31, 1981, as security for debtor's note to Kanawha, United American Bank of Knoxville (UAB) issued an irrevocable letter of credit in the sum of $1,631,604.22 naming Kanawha as the beneficiary. In consideration of issuance of this letter of credit, debtor executed and delivered to UAB its demand promissory note, dated March 30, 1981, in the amount of $1,631,604.22 "or, if lesser, so much thereof as may from time to time be drawn under [UAB] Irrevocable Credit No. 1789, *in favor of Kanawha....*" To secure the note to UAB debtor contemporaneously executed its deed of trust on its "Front Nine Golf Course" and "Back Nine Golf Course." The deed of trust was duly recorded on May 21, 1981.

On June 23, 1981, Chemical Bank issued its confirmation of the UAB letter of credit in favor of Kanawha. The confirmation recites in part: "WE THE CHEMICAL BANK, HEREBY CONFIRM THE [UAB] CREDIT AND UNDERTAKE THAT ALL DRAFTS DRAWN AND PRESENTED AS SPECIFIED WILL BE DULY HONORED...."

UAB was declared insolvent and closed by the Commissioner of Banking for the State of Tennessee on February 14, 1983. The Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for UAB. The successor bank to UAB acquired certain assets and assumed certain liabilities pursuant to a purchase agreement with FDIC. However, the successor bank assumed no liability for letters of credit issued by UAB. Further, FDIC gave notice to the debtor and Kanawha that it rejected any and all claims related to letters of credit issued by UAB. Similar notice was given to Chemical Bank by FDIC. Neither UAB nor FDIC has ever paid Kanawha any money under the UAB letter of credit.

On March 23, 1983, Kanawha drew on Chemical Bank its sight draft in the amount of $558,587.73, the unpaid balance on debtor's $1,590,000 note. Pursuant to its obligation as a confirming bank of the UAB letter of credit, Chemical Bank honored the sight draft on March 28, 1983. After the honor of its draft Kanawha assigned and endorsed to Chemical Bank debtor's $1,590,000 note. Debtor has not paid Chemical Bank any portion of the $558,587.73 paid to Kanawha on debtor's behalf.

On July 19, 1984, Chemical Bank filed a secured claim for $558,587.73, plus interest. The debtor and Craig dispute whether Chemical Bank is entitled to a secured claim.[3] A claim against the debtor by the Crabtree estate, for which Craig is the trustee in bankruptcy,[4] is partially secured by a second deed of trust, against the golf course property, recorded after the deed of trust securing the UAB letter of credit.

Contending its payment to Kanawha satisfied an obligation of both the debtor and UAB, Chemical Bank maintains it should be equitably subrogated to the rights of UAB under the debtor's deed of trust. Chemical Bank argues that denying equitable subrogation produces an unintended result—releasing the debtor from the deed of trust, given to enable it to obtain a loan from Kanawha, even though the debtor has not reimbursed monies paid under the UAB letter of credit. Debtor, however, insists that if Chemical Bank is entitled to subrogation at all it is subrogated only to the rights of Kanawha, the creditor it paid. Further, debtor asserts that subrogation is inappropriate because Chemical Bank, as a confirming bank, satisfied an obligation for which it was independently and principally liable.

---

**3.** Debtor filed a motion pursuant to Bankruptcy Rule 7015(b) asserting that Chemical Bank has not filed the documentation necessary to establish a claim. However, copies of both the debtor's $1,590,000 promissory note to Kanawha, endorsed in favor of Chemical Bank, and its note and deed of trust to UAB are attached to the Chemical Bank proof of claim. Further, debtor has stipulated that Chemical Bank honored Kanawha's sight draft drawn against the UAB letter of credit issued on debtor's behalf. Accordingly, Chemical Bank has a $558,587.73 claim, excluding interest, against the debtor. The only question is whether the claim is secured.

**4.** See note 2, *supra.*

## II

■ Preliminarily, it is necessary to consider choice of law questions. The UAB letter of credit, issued by a Tennessee bank, was confirmed by and paid at the offices of a New York bank. The real property securing payment of the letter of credit, as well as the situs of debtor's business, is located in West Virginia. Chemical Bank contends the choice of law is immaterial because similar or identical principles of equitable subrogation apply in all three states. However, whether Chemical Bank is entitled to a lien against the debtor's golf course property is ultimately a question of West Virginia law. *See Curry v. McCanless*, 307 U.S. 357, 363, 59 S.Ct. 900, 903, 83 L.Ed. 1339 (1939).

The UAB letter of credit recites in part: "Except as otherwise expressly stated herein, this Credit is subject to [the] Uniform Customs and Practice for Commercial Documentary Credit [UCP] of the International Chamber of Commerce (1974 Revision), Publication No. 290." The UCP was drafted by the International Chamber of Commerce for the purposes of establishing uniformity in the treatment of documentary credits and facilitating international trade practices.[5] Chemical Bank's confirmation form likewise provides for the applicability of the UCP.

Article 3 of the UCP provides in material part:

> b. An irrevocable credit may be advised to a beneficiary through another bank

(the advising bank) without engagement on the part of that bank, but when an issuing bank authorises or requests another bank to confirm its irrevocable credit and the latter does so, such confirmation constitutes a definite undertaking of the confirming bank in addition to the undertaking of the issuing bank, provided that the terms and conditions of the credit are complied with:

> i. to pay, if the credit is payable at its own counters, whether against a draft or not, or that payment will be made if the credit provides for payment elsewhere....[6]

Hence, pursuant to this provision and the terms of its own confirmation, Chemical Bank agreed to honor all drafts drawn by Kanawha and presented as specified in the UAB letter of credit and Chemical's confirmation.

Because it was specifically nominated in the UAB letter of credit, Chemical Bank was authorized to pay the credit.[7] However, upon payment Chemical Bank was entitled to reimbursement from UAB under UCP Article 8b:

> Payment, acceptance or negotiation against documents which appear on their face to be in accordance with the terms and conditions of a credit by a bank authorised to do so, binds the party giving the authorisation to take up the documents and reimburse the bank which has effected the payment, acceptance or negotiation.[8]

---

5. Although Article 5 of the Uniform Commercial Code is the basic source of law on the subject of letters of credit, some states, including New York, have modified Article 5 by enacting the following provision:

> Unless otherwise agreed, this Article 5 does not apply to a letter of credit ... if by its terms ... such letter of credit ... is subject in whole or in part to the Uniform Customs and Practice for Commercial Documentary Credits fixed by the Thirteenth or by any subsequent Congress of the International Chamber of Commerce.

U.C.C. § 5–102(4) (1979).

6. Compare the undertaking of confirming bank under U.C.C. § 5–107(2) (1977): "A confirming bank by confirming a credit becomes directly obligated on the credit to the extent of its confir-

mation as though it were its issuer and acquires the rights of an issuer."

7. See section e of UCP General provisions and definitions.

8. Compare the right to reimbursement provided by U.C.C. § 5–114(3) (1977):

> Unless otherwise agreed *an issuer* which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit and to be put in effectively available funds not later than the day before maturity of any acceptance made under the credit. (emphasis added)

As previously stated, note 6, *supra,* to the extent of its confirmation a confirming bank acquires

But UAB failed six weeks prior to Chemical Bank's payment to Kanawha.

## III

Contending equitable subrogation is a highly favored remedy which courts are inclined to extend rather than restrict, *Bonham v. Coe*, 249 A.D. 428, 292 N.Y.S. 423 (N.Y.App.Div.1937), *aff'd*, 276 N.Y. 540, 12 N.E.2d 566 (1937), Chemical Bank asserts that it is equitably subrogated to the rights of UAB under the note and deed of trust from the debtor to the extent of its payment to Kanawha. Insisting its $558,-587.73 payment to Kanawha discharged pro tanto debtor's obligation to UAB under the note secured by the deed of trust, Chemical Bank contends it is entitled to the security given by the debtor to UAB.

■ Equitable subrogation "arises by operation of law where a person having a liability ... pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditors whom he has paid." 83 C.J.S. *Subrogation* § 3 (1953) (footnote omitted). The purpose of equitable subrogation is to achieve an "equitable adjustment ... and perfect justice between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it, and preventing the sweeping away of the fund from which in good conscience the creditor ought to be paid." 73 Am.Jur.2d *Subrogation* § 3 (1974) (footnotes omitted). The doctrine is recognized in West Virginia. In *Bank of Marlinton v. McLaughlin*, 123 W.Va. 608, 17 S.E.2d 213 (1941) a husband transferred property to his wife in consideration of her satisfaction of the liens against the property. When the conveyance was set aside because it was a fraudulent transfer as to the husband's creditors, the wife was equitably subrogated to the rights of the lienors she had paid. *Cf.*

*Buskirk v. State-Planters Bank & Trust Co.*, 113 W.Va. 764, 169 S.E. 738 (1933) (junior lienor paying taxes to prevent foreclosure by senior lienor not subrogated to priority position of taxing authority).

However, Chemical Bank is not seeking subrogation to the rights of the creditor it paid, (Kanawha). Instead it seeks subrogation to the rights of, or indemnification from the security given to, UAB.

Citing *Merchants Bank & Trust Co. v. Economic Enterprises, Inc.*, 44 B.R. 230 (Bankr.D.Conn.1984), debtor argues that payment on a bank letter of credit cannot give rise to subrogation. In *Economic Enterprises* the debtor obtained a construction loan from a bank. The lending bank was secured by a construction mortgage and a $400,000 irrevocable letter of credit issued by Merchants Bank & Trust. When the debtor defaulted on its construction loan the lending bank demanded and received payment pursuant to the letter of credit from Merchants Bank & Trust, which in turn sought subrogation to the lending bank's first mortgage rights.[9] The court denied subrogation, holding that payment does not entitle an issuer of a credit to invade the underlying contract between the issuer's customer and the beneficiary when the customer has no cause of action against the beneficiary. The question before the court, however, is dissimilar to the issue in *Economic Enterprises*. Chemical Bank is not seeking to invade or interfere with the rights of the credit beneficiary (Kanawha) under any underlying contract. Instead Chemical Bank seeks the benefit of the rights granted to UAB (Chemical's customer) by the debtor (UAB's customer). Also, the opponent to subrogation in *Economic Enterprises* was the beneficiary of the credit, not the customer. In the instant case, a junior lienor and the debtor, the party who ought to pay, oppose Chemical Bank's claim to equitable subrogation.[10]

the rights of an issuer. U.C.C. § 5–107(2) (1977).

**9.** Merchants Bank & Trust sought to share ratably in the first mortgage to the extent of its $400,000 payment to the lending bank.

**10.** The court in *Economic Enterprises* also noted that the equities favored denying subrogation since Merchants Bank & Trust had other security for its claim. The equities in the case before this court, however, favor Chemical Bank.

■ As a general rule subrogation is not available to a party discharging a debt in the performance of his own obligation. *Commercial Casualty Ins. Co. v. Petroleum Pipe Line Co.*, 83 F.2d 412, 414 (10th Cir.1936) (citing decisions from California, Kansas, Missouri, Oklahoma, Pennsylvania, and Tennessee). *See also Rubenstein v. Ball Bros. Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir.1984) (right to subrogation exists only where subrogee discharges debt for which another, not the subrogee, is primarily liable). *But see O'Neal v. Stuart*, 281 F. 715 (6th Cir.1922), where as between the two makers of a note secured by a vendor's lien the bankrupt was the principal obligor and his co-maker was in fact a surety. Paying the note shortly after his principal's bankruptcy, the co-maker was allowed a secured claim in the bankruptcy proceeding on the theory of subrogation to the vendor's lien. Unquestionably, through its confirming letter and under the UCP, Chemical Bank was independently and primarily liable to Kanawha. Conceding as much, Chemical Bank asserts that, nevertheless, in its relationship to the debtor and UAB it was a guarantor or surety, thus entitled to subrogation to the security given to UAB.

■ While not a classic example for subrogation, the court believes Chemical Bank should be equitably subrogated to the rights of UAB under the debtor's note and deed of trust.[11] Overriding considerations compel the conclusion that Chemical Bank is entitled to a secured claim. Debtor's note and deed of trust to UAB were integral to its receipt of the loan from Kanawha; the note and deed of trust were given to secure any payment under the UAB letter of credit; Chemical Bank honored the UAB credit when it paid Kanawha. Permitting the debtor to escape any obligation under its deed of trust, given to secure reimbursement of monies paid on its behalf under the UAB credit, simply because Chemical Bank, and not UAB, honored the credit is inequitable and unjust. The fact that UAB failed and was not called upon by Kanawha to honor its credit certainly does not excuse debtor's reimbursement obligation; likewise, the benefit of the security debtor offered to assure reimbursement should not be extinguished. The equities clearly favor Chemical Bank vis-a-vis either junior lienholders or debtor's general creditors.[12] Their rights are not prejudiced because the deed of trust to UAB was recorded in 1981. Denying secured status to Chemical's claim would, however, effect a windfall, at Chemical's expense.

IV

■ Debtor further contends that its deed of trust to UAB is defective because it inadequately describes the debt secured. The deed provides that its purpose is:

To secure the payment of an indebtedness for borrowed money evidenced by a

11. Alternatively, the court believes Chemical Bank should be indemnified from the security given to UAB. See *Crab Orchard Improvement Co. v. Chesapeake & O. Ry.*, 115 F.2d 277 (4th Cir.1940), *cert. denied*, 312 U.S. 702, 61 S.Ct. 807, 85 L.Ed.2d 1135 (1941), where the court quoted the Restatement of Restitution's definition of indemnity:

A person who ... has discharged a duty ... owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

*Id.* at 282. *See also* 41 Am.Jur.2d *Indemnity* § 1 (1968).

As between Chemical Bank and the debtor, payment to Kanawha should have been made by the debtor.

12. When Chemical Bank confirmed the UAB credit it obtained a written agreement permitting it to debit UAB's correspondent account in the event it honored drafts against the credit. This security was not available to Chemical after UAB failed. The debtor and Craig maintain Chemical Bank chose its security and that it should not be permitted to look to the real estate security debtor gave to UAB. Subrogation should not be permitted to displace the real agreement between, or among, parties. *Buskirk v. State-Planters Bank & Trust Co.*, 113 W.Va. 764, 767, 169 S.E. 738, 739 (1933). To secure its reimbursement of monies paid under the UAB credit debtor gave its deed of trust. Chemical Bank made payment under the UAB credit. Equitably subrogating Chemical Bank to UAB's rights under the deed of trust essentially permits enforcement of the debtor's agreement.

certain Promissory Note ("Note 2") of even date herewith, executed by Grantor as maker, in the principal amount of One Million Six Hundred Thirty-One Thousand Six Hundred Four and 22/100 Dollars ($1,631,604.22), with interest thereon from date at the rate set forth in the Note, payable to the order of United American Bank in Knoxville at its office in Knoxville, Tennessee, said Note being in substantially the form and content (with the exception of signatures) as Exhibit D annexed hereto and by this reference incorporated in and made a part of this Deed of Trust.

Neither the note nor a copy thereof was attached to the deed of trust. Nonetheless, the court rejects debtor's argument because the description is sufficient to identify the indebtedness secured. See *Holley's Ex'r v. Curry,* 58 W.Va. 70, 51 S.E. 135 (1905) (substantial accuracy reasonably describing indebtedness suffices).

Debtor's objection to the secured status of Chemical Bank's claim is OVERRULED.

IT IS SO ORDERED.