**In re Herbert E. RUSSELL, Debtor.**

**Bankruptcy No. ED 84–58M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

June 14, 1989.

See also, Bkrtcy., 60 B.R. 42.

William R. Gibson, Fayetteville, Ark., Trustee.

Jill R. Jacoway, Fayetteville, Ark., for Snider & Gibson.

Charles W. Baker, Little Rock, Ark., for Creditor's Committee.

Susan Gunter, Little Rock, Ark., for debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On July 18, 1984, Herbert E. Russell filed a voluntary petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code. On March 19, 1985, Hon. William R. Gibson was appointed trustee. The trustee objected to Claim No. 84, filed by R. Edward Snider, Jr., (Snider) in the sum of $13,220.24, and Claim No. 50, filed by Richard H. Gibson (Gibson) in the sum of $56,626.33, and a hearing was held on September 13, 1988. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction to enter a final judgment.

On January 2, 1978, Snider and Gibson borrowed $988,000.00 from National Bank of Commerce of Pine Bluff (NBC) to purchase 5,261 shares of stock in Citizens First National Bank of Arkadelphia. Snider and Gibson jointly executed a promissory note for $988,000.00 and delivered it to NBC. Snider and Gibson granted a lien in the stock to NBC to secure repayment of the debt, and NBC perfected its lien by taking physical possession of the stock certificates. Title to the stock purchased with the loan proceeds was divided between Snider and Gibson in some proportion not shown by the record. For reasons not fully explained by the record, this stock became "around" 16,000 shares of stock in an entity known as First Arkadelphia Bancshares, Inc., (FAB). According to the testimony, the stock was worth approximately $54.00 a share on the day of the hearing. According to the claim filed by NBC in the case, the principal balance of the indebtedness owed to NBC by Snider and Gibson as of January 2, 1985, was $679,498.32.

On November 3, 1981, Gibson sold 2,000 shares of his stock to the debtor. The sale was evidenced by a written contract between Gibson and the debtor. According to the contract, the purchase price for the stock was $171,220.000, or $85.61 a share, and was payable by the debtor as follows: (1) payment of $210.03 in cash to Gibson; (2) assumption of $49,015.75 of Gibson's portion of the $988,000.00 debt to NBC; and (3) execution of a promissory note in favor of Gibson for $121,994.25. The note was to be paid in quarterly payments of $10,166.18, plus interest. The debtor's obligation to Gibson pursuant to the contract was secured by a second lien on the 2,000 shares of stock sold to the debtor.

FAB's stockholder ledger was revised to reflect the debtor as record owner of 2,000 shares, and new stock certificates in the debtor's name were prepared and exchanged for Gibson's cancelled certificates. NBC retained possession of the 2,000 shares as collateral for Snider and Gibson's note, and all parties agree that NBC's first lien in the 2,000 shares was perfected on the date the petition was filed. Gibson testified that he sent a copy of the promissory note and the contract to NBC soon after they were executed.

The debtor made payments to Gibson on the promissory note and made payments to

NBC on the portion of NBC's debt he assumed until he filed his bankruptcy petition. When the debtor ceased making payments to NBC, Snider and Gibson made the payments to prevent the note to NBC from becoming delinquent. Snider made payments on the debtor's obligation to NBC totaling $13,115.70 and Gibson made payments totaling $34,144.51.

In October 1987, Snider and Gibson paid the NBC debt in full with proceeds from a loan from Arkansas Bank & Trust Company of Hot Springs (ABT), and NBC withdrew its claim against the estate. According to the testimony, all of the stock certificates were physically transferred to ABT to be used as collateral for the new loan, but the debtor's 2,000 shares were not formally pledged because the trustee would not execute the pledge documents.

Snider claims to be equitably subrogated to NBC's secured claim to the extent of the $13,115.70 he paid NBC on the debtor's behalf. Gibson claims to be equitably subrogated to NBC's secured claim to the extent of the $34,144.51 he paid NBC on the debtor's behalf. The parties stipulated that the unpaid principal balance of the promissory note in favor of Gibson on the day the bankruptcy petition was filed was $56,626.33 and that interest had accrued postpetition in the sum of $24,437.10 through the date of the hearing. Gibson's combined claim is therefore $115,207.94.

The trustee alleges that neither Snider nor Gibson is entitled to be equitably subrogated to the claim of NBC, and that Gibson's claim is not secured because Gibson failed to perfect his lien in the 2,000 shares of stock on the day the petition was filed.

## I

### SUBROGATION

Subrogation arises where a party having a liability pays a debt of a party who is primarily liable on the debt and who, in equity, should pay. *In re Bugos*, 760 F.2d 731, 733 (7th Cir.1984); *In re Glade Springs, Inc.*, 47 B.R. 780, 784 (Bankr.E.D. Tenn.1985), *aff'd sub. nom. Chemical Bank v. Craig (In re Glade Springs, Inc.)*, 826 F.2d 440 (6th Cir.1987). Subrogation entitles the party paying the debt to exercise all rights and remedies, which the creditor possessed against the party who should have paid the debt. *American Surety Co. v. Bethlehem Nat'l Bank*, 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941); *Capital Nat'l Bank of Tampa v. Hutchinson*, 435 F.2d 46, 52 (5th Cir. 1970). The classic example of an entity possessing a right of subrogation would be a surety, a guarantor or an endorser. *See Bank of America Nat'l Trust & Savings Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 89 B.R. 150, 151 (Bankr.D. Colo.1988); *In re Tygrett*, 72 B.R. 129, 130 (Bankr.C.D.Ill.1987). Subrogation is an equitable remedy designed to prevent unjust enrichment. *In re Glade Springs, Inc.*, 47 B.R. at 784; 83 C.J.S. *Subrogation* § 2 (1953). Subrogation is not a matter of absolute right which a party paying a debt of another may enforce at will. *In re Bugos*, 760 F.2d at 734; *Moon Realty Co. v. Arkansas Real Estate Co.*, 262 Ark. 703, 705, 560 S.W.2d 800, 801 (1978); 73 Am.Jur.2d *Subrogation* § 16 (1974). For instance, subrogation will not be applied where its application would inequitably disturb the priority of liens. 83 C.J.S. *Subrogation* § 6(d); 73 Am.Jur.2d *Subrogation* § 15.

The Bankruptcy Code authorizes a "codebtor" of the debtor to assert rights of subrogation in a bankruptcy case. 11 U.S.C. § 509 provides as follows:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

(1) a claim of such entity for reimbursement or contribution on account of such payment of such creditor's claim is—

(A) allowed under section 502 of this title;

(B) disallowed other than under section 502(e) of this title; or

(C) subordinated under section 510 of this title; or

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

Under 11 U.S.C. § 509, a party may be subrogated to the extent of any payment made and, in the event of a partial payment, the party asserting subrogation is automatically subordinated to the claim of the creditor. *See* 3 *Collier on Bankruptcy* ¶ 509.04 (15th ed. 1989). The Bankruptcy Code denies subrogation if "as between the debtor and such entity, such entity received the consideration for the claim held by such creditor." 11 U.S.C. § 509(b)(2). This exception is a statutory expression of the general principle of equitable subrogation that the right of subrogation is not available to a party who satisfies an indebtedness for which he is ultimately and primarily obligated. 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978); S17411–12 (daily ed. Oct. 6, 1978). "A right to subrogation exists only when the subrogee pays or discharges a debt for which another party is primarily liable. One cannot seek subrogation for paying one's own debts." *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir.1984). *See Cooper v. Cooper (In re Cooper)*, 83 B.R. 544, 547 (Bankr.C.D.Ill. 1988), *In re Tygrett*, 72 B.R. at 130; *Ridge v. Smothers (In re Smothers)*, 60 B.R. 733, 735 (Bankr.W.D.Ky.1986); *In re Glade Springs, Inc.*, 47 B.R. at 785; *Whitley v. Irwin*, 250 Ark. 543, 549, 465 S.W.2d 906, 910 (1971); *Lindley v. Marriott*, 196 Ark. 1178, 1178, 114 S.W.2d 453, 454 (1938).

Under the facts in this case, the consideration for the original debt was distributed partially to Snider and partially to Gibson although both were fully liable to NBC as makers on the note. As between themselves, Snider and Gibson were primarily liable only for the amount of debt proportionate to the amount of stock purchased by each of them. *See* 72 C.J.S. *Principal and Surety* § 34 (1987). If either Snider or Gibson had been compelled to pay more than his share of the indebtedness to NBC, a classic right of subrogation would exist in favor of the one who paid more.

When Gibson sold 2,000 shares of his stock to the debtor and the debtor assumed a portion of Gibson's primary debt to NBC, the debtor became the principal as between the debtor and Gibson. *In re Trasks' Charolais*, 84 B.R. 646, 649 (Bankr.D.S.D.1988); 72 C.J.S. *Principal and Surety*, § 35. *See Lindley v. Marriott*, 196 Ark. at 1178, 114 S.W.2d at 454. Therefore, the debtor was the primary obligor to NBC for $49,015.75 of Gibson's debt and Snider and Gibson were sureties as to that amount. NBC held a first priority secured claim in the debtor's 2,000 shares of stock and Gibson held a claim against the debtor secured by a second lien in the 2,000 shares of stock. When NBC's secured claim was paid, its lien was discharged and Gibson's lien became a first lien. *See Landmark Land Co. v. Sprague*, 529 F.Supp. 971, 979 (S.D.N.Y. 1981), *rev'd on other grounds*, 701 F.2d 1065 (2d Cir.1983).

However, Gibson is not entitled to assert a right of subrogation in this bankruptcy case for the $34,144.51 he paid NBC on behalf of the debtor because the stock he received was the consideration for this portion of the indebtedness to NBC. *See* 11 U.S.C. § 509(b)(2). The debtor is liable to Gibson for the full amount of the debt under their written contract.

Snider's claim for subrogation to the extent of $13,115.70 has merit. Snider paid that portion of an indebtedness for which he was liable as a surety and for which the debtor was primarily liable to NBC. Subrogation will allow Snider to assert NBC's

rights as a first lienholder in the stock, and Snider's claim will have priority over Gibson's secured claim. This result is not inequitable because, as between Snider and Gibson, the $13,115.70 Snider paid NBC should have been paid by Gibson since Gibson received the consideration for this portion of the debt.

## II

## PERFECTION

The trustee asserts that Gibson did not perfect his lien in the 2,000 shares of stock because at the time the petition was filed Gibson did not have physical possession of the stock certificates. This argument is without merit.

Under the Uniform Commercial Code (UCC) in effect in Arkansas at the time of the execution of the contract between Gibson and the debtor, security interests in "instruments," including shares of stock, were perfected by possession of the instruments by the secured party. *See* Ark.Stat. Ann. §§ 85–9–304(1), § 85–9–105(1)(i) (Supp.1985).[1] Although it would be physically impossible for several creditors to simultaneously possess shares of stock, no UCC provision prohibits junior creditors from asserting a security interest in stock already pledged to a senior secured party. Ark.Stat.Ann. § 85–9–305, as it appeared prior to the 1985 amendments, provided:

> A security interest in ... instruments ... may be perfected by the secured party's taking possession of the collateral. If such collateral ... *is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.* A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Article. (emphasis supplied)

This provision permitted perfection by an original secured lender and made secondary pledges possible where instruments were in the hands of a bailee. *Craig v. Union County Bank (In re Crabtree)*, 48 B.R. 528, 531–32 (Bankr.E.D.Tenn.1985). In determining whether a secured party holding a first lien in an instrument can act as a bailee or agent for other secured parties under this UCC section, the Court in *Landmark Land Co. v. Sprague*, 529 F.Supp. 971 (S.D.N.Y.1981), *rev'd on other grounds*, 701 F.2d 1065 (2d Cir.1983), stated:

> Where, as in the instant case, the senior secured party in possession of the collateral acknowledges and accepts the instructions of the pledgor to deliver the collateral to the junior secured party after the debt to the senior secured party is satisfied, then the senior secured party is considered to possess the collateral as the agent or bailee of the junior secured party.

*Id.* at 980 (citations and footnotes omitted). *See In re Chapman*, 5 U.C.C. Rep. 649, 651–53 (W.D.Mich.1968) (one secured party can possess for all secured parties if the senior secured party receives notice of the junior interest). *See also Union Planters Nat'l Bank v. World Energy Systems Assocs.*, 816 F.2d 1092, 1095–96 (6th Cir.1987) (analogous provision for letters of credit); *Gins v. Mauser Plumbing Supply Co.*, 148 F.2d 974, 977–78 (2d Cir.1945) (pre-UCC law) (secondary pledge perfected if notice given and senior secured party agrees to deliver collateral upon satisfaction of its lien); *Pierce v. Nat'l Bank of Commerce*, 268 F. 487, 492–93 (8th Cir.1920) (pre-UCC law) (third party can hold collateral as bailee if notice given). *Cf. Hale v. Kontaratos (In re Kontaratos)*, 10 B.R. 956 (Bankr.D.Me.1981) (concluding that notice must be given by pledgor even though statute does not specify who must provide notification).

NBC, the senior secured party, had physical possession of the 2,000 shares of stock

---

**1.** The 1985 amendments excluded "certificated securities" from the provisions of sections 85–9–304 and 85–9–305. *See* Ark.Stat.Ann. §§ 85–9–304(1) (note), 85–9–305 (note) (Supp.1985). The perfection of security interests in all securities is now governed by Ark.Code Ann. § 4–8–321 (1987).

on the day the bankruptcy petition was filed. Although NBC was not explicitly instructed to turn the 2,000 shares of stock over to the junior secured party, Gibson, upon satisfaction of its claim, the testimony established that NBC received a copy of the contract by which the debtor pledged the stock and, therefore, received notification that Gibson and the debtor intended Gibson to hold a second lien in the stock.

### DIRECT EXAMINATION OF RICHARD GIBSON

Q ... At the time you entered into this agreement, did you send a copy of that note and/or contract to NBC at Pine Bluff?

A Yes, ma'am.

Q Do you know for a fact that they have this document in their possession?

A Yes, ma'am.

. . . .

Q And do you know why you filed your own claim?

A Yes, ma'am. Jim Keith, with NBC in Pine—in Pine Bluff, phoned me, and told me that they were filing a claim for their amount of debt, and that since I was a—had a second lien on that stock, that I needed to file a claim for my portion of the debt.

Q All right, thank you. And they were basing that assertion of the second lien upon ...

A Upon the copy of the note that they had in their possession, that I had sent them.

Record at 79–80.

Q ... Do you know how a security interest in stock is perfected?

A Well, I understand that the person who has the possession of the stock, you notify them.

Q OK. Possession of the stock is how you ...

A Possession of the stock.

Q ... perfect a security interest. Could you have had physical possession of that stock?

A No, ma'am.

Q Why not?

A Because there was a first lien to NBC Pine Bluff.

Q And did you notify NBC of Pine Bluff of your second lien?

A Yes, ma'am.

Q And that they were holding as your agent? That when they finished with it, you wanted it because it was then going to be subject to your lien?

A Yes, ma'am.

Q NBC had physical possession at the time the bankruptcy petition was filed?

A Yes ma'am.

Record at 81–82.

Therefore, on the day the petition was filed, Gibson held a validly perfected second lien in the debtor's 2,000 shares of stock. When the NBC debt was satisfied, the 2,000 shares were delivered to ABT rather than to the second lienholder, Gibson. However, based on the record, it appears that ABT held the stock as Gibson's agent pending the outcome of this litigation to determine the extent of Gibson's lien. ABT has no lien rights in the stock because the trustee has not granted ABT any security interest. Gibson's lien, therefore, became a first lien once NBC's claim was paid in full, subject to the subrogation rights granted Snider.

### III

### CONCLUSION

The trustee's objections are overruled in part and sustained in part. According to the testimony, the stock had an appraised value of $54.00 a share for a total value of $108,000.00. Therefore, Snider is allowed a first priority secured claim of $13,115.70 in the 2,000 shares of stock, and Gibson is allowed a second priority secured claim of $94,884.30 in the 2,000 shares of stock. The balance of Gibson's claim, which is $20,323.64, is disallowed because it represents postpetition interest on the unsecured portion of his claim. *See* 11 U.S.C. §§ 502(b)(2), 506(b); *Thompson v. Kentucky Lumber Co. (In re Kentucky Lumber Co.)*, 860 F.2d 674, 676 (6th Cir.1988);

*In re McDougal,* 65 B.R. 495, 497 (Bankr. W.D.Ark.1986).

IT IS SO ORDERED.