In re CORNMESSER'S, INC., Debtor.

William B. Cornmesser, Plaintiff,

v.

Lisa Swope, Trustee, Defendant.

Bankruptcy No. 00–23812–BM.
Adversary No. 01–2001–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 22, 2001.

Thomas W. Cartwright, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, PA, for plaintiff.

Lisa M. Swope, Ebensburg, PA, Chapter 7 Trustee, defendant pro se.

### *MEMORANDUM OPINION*

BERNARD MARKOVITZ, Bankruptcy Judge.

William Cornmesser (hereinafter "Cornmesser"), guarantor of a secured debt owed by debtor Cornmesser's, Inc. to Keystone Financial Bank, seeks a determination that he is subrogated to the rights of Keystone to the extent that he personally paid the debt owed to Keystone. He further asserts that a surplus in the amount of $11,415.03 remaining after the debt was fully satisfied is not property of debtor's bankruptcy estate but instead belongs to him and requests an order directing the chapter 7 trustee to remit the surplus to him forthwith.

The chapter 7 trustee denies that Cornmesser is subrogated to the rights of Keystone and insists that the surplus in question is property of debtor's bankruptcy estate and therefore is subject to administration by the trustee as part of debtor's bankruptcy estate.

We conclude that Cornmesser is subrogated to the rights of Keystone to the extent that he personally paid the debt owed by debtor to Keystone pursuant to his guarantee. In addition, we conclude that the surplus remaining after Keystone was fully satisfied is not property of debtor's bankruptcy estate and belongs instead to Cornmesser and accordingly will direct the chapter 7 trustee to forthwith remit the surplus to Cornmesser.

### FACTS

Debtor was a corporation which did business as a hardware and sporting goods store.

Cornmesser was debtor's president and held in excess of one-third of its outstanding shares of stock. The remainder of the stock was held by other members of the Cornmesser family.

Keystone was a secured creditor of debtor. Cornmesser had personally guaranteed repayment of the debt owed by debtor to Keystone.

Keystone initiated a foreclosure proceeding against debtor in state court in October of 1999, after debtor defaulted on its obligation to Keystone.

The outstanding amount of the debt owed to Keystone in February of 2000 was $412,500.00.

A sheriff's sale of debtor's personalty was conducted on February 25th through 27th and on March 11th and 12th of 2000. The net amount realized from the sale, which was forwarded to Keystone on April 10, 2000, was $69,596.97.

In addition to foreclosing against debtor's assets, Keystone called the guarantee of Cornmesser. A private sale of his residence, which was consummated on March 13, 2000, netted $354,318.36. These proceeds also were applied towards the debt owed by debtor to Keystone.

The amount realized from the sale of debtor's assets ($69,596.67) and from the sale of Cornmesser's residence ($354,-318.36) totaled $423,915.03, which exceeded

the amount debtor owed to Keystone ($412,500.00) by $11,415.03.

Debtor filed a voluntary chapter 7 petition on May 18, 2000. A chapter 7 trustee was appointed shortly thereafter. The bankruptcy schedules listed assets having a total declared value of $1,621.00 and liabilities totaling $206,640.79. Of this latter amount, a total of $201,365.79 was owed to unsecured nonpriority creditors. The remainder was owed to unsecured priority creditors.

At some undisclosed time after the filing of the bankruptcy petition, Keystone remitted the above surplus to the chapter 7 trustee, who presently retains the funds. These surplus funds apparently comprise the sole asset available for distribution to creditors of the bankruptcy estate.

Cornmesser brought this adversary action on January 3, 2001. He seeks a determination that he is subrogated to the rights of Keystone pursuant to § 509(a) of the Bankruptcy Code and requests an order directing the chapter 7 trustee to forthwith turn the above surplus funds over to him.

The parties have stipulated to the relevant facts of this case and agreed on May 11, 2001, that we could decide it without conducting an evidentiary hearing.

## DISCUSSION

■ Cornmesser asserts that he is subrogated by virtue of 11 U.S.C. § 509(a) to the rights of Keystone to the extent to which, as guarantor, he paid the debt owed by debtor to Keystone and therefore is entitled to the entire amount of the overpayment to Keystone.

Section 509 of the Bankruptcy Code provides in part as follows:

(a) Except as provided in subsection (b) . . . of this section, an entity that is liable with the debtor on . . . a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—. . . .

> (2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, . . . of an entity that is liable with the debtor on . . . such claim, until such claim is paid in full.

11 U.S.C. § 509.

■ An entity is subrogated to the rights of a creditor for purposes of § 509(a) if and only if: (1) the entity is liable with the debtor; (2) on a claim of a creditor against the debtor; and (3) the entity pays such claim. *CCF, Inc. v. First National Bank & Trust Co. of Okmulgee (In re Slamans)*, 69 F.3d 468, 473 (10th Cir.1995).

■ If a co-debtor pays all or a portion of a debt owed by a debtor, thereby resulting in satisfaction of the debt in full, § 509(a) enables the co-debtor to "step into shoes of the creditor" to the extent of the co-debtor's payment. *In re Southwest Equipment Rental, Inc.*, 193 B.R. 276, 283 (E.D.Tenn.1996). An entity that is secondarily liable for a debt—e.g., a guarantor—falls within the scope of § 509(a). *Id.*

■■ Equitable subrogation, a creation of state law, is distinct from subrogation under § 509(a). For instance, whereas the former requires payment of an obligation in full by the subrogee, the latter allows partial subrogation to the extent that the

obligation is paid by the subrogee. *Cuda v. Nigro (In re Northview Motors, Inc.)*, 202 B.R. 389, 400–01 (Bankr.W.D.Pa.1996). To the extent that the debt is only partially satisfied, the co-debtor is subordinated to the creditor by virtue of § 509(c). *Id.*

The above requirements of § 509(a) are satisfied in this instance. Cornmesser had guaranteed payment of the debt owed by debtor to Keystone, a secured creditor of debtor, and consequently also was liable, albeit secondarily, to Keystone. Cornmesser sold his residence and used the net proceeds to satisfy the remaining balance of the debt after debtor's assets were sold at a sheriff's sale.

The chapter 7 trustee does not deny that all the above requirements of § 509(a) are satisfied in this instance but asserts instead that the exception to subrogation set forth at § 509(b)(2) applies.

Cornmesser was a shareholder and officer of debtor both when the loan from Keystone occurred and when it was paid with the net proceeds realized from the sale of Cornmesser's residence. According to the chapter 7 trustee, it follows from Cornmesser's status as shareholder and officer of debtor that he, rather than debtor, personally received the consideration for Keystone's claim when it loaned money to debtor. This argument is without merit.

Subsection 509(b)(2) embodies the general principle that subrogation is not available to a party who satisfies a debt for which that party was primarily obligated. *In re Russell*, 101 B.R. 62, 65 (Bankr. W.D.Ark.1989). Subrogation is not available for paying one's own debts. *Id.*

It does not follow that Cornmesser received the consideration for Keystone's claim merely because he was a shareholder and officer of the corporation. Something

more is required to warrant such an inference.

Even if all of its stock is owned by a single individual, a corporation is a separate and distinct entity. *College Watercolor Group, Inc. v. Newbauer, Inc.*, 468 Pa. 103, 115, 360 A.2d 200, 207 (1976). A shareholder generally is not liable for the debts of a corporation. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520–21 (3d Cir.1994), *aff'd*, 513 U.S. 1040, 115 S.Ct. 634, 130 L.Ed.2d 539 (1994). Also, an officer of a corporation is not personally liable for the corporation's debts merely because he or she is an officer. *Longenecker v. Commonwealth of Pennsylvania*, 142 Pa.Cmwlth. 130, 136, 596 A.2d 1261, 1263 (1991), appeal denied, 531 Pa. 656, 613 A.2d 561 (1992). There is a strong presumption against piercing the corporate veil and holding a shareholder or officer liable for the obligations of the corporation. *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893, 895 (1995).

The chapter 7 trustee has not pointed to anything in this instance which would warrant disregarding the status of the debtor as a separate entity and inferring that Cornmesser personally received the consideration when Keystone loaned money to debtor.

Property of the bankruptcy estate includes any property in which, as of the commencement of the bankruptcy case, the debtor had a legal or equitable interest. 11 U.S.C. § 541(a)(1).

The proceeds derived from the sale of debtor's assets and the sale of Cornmesser's residence when combined exceeded the amount of the debt owed to Keystone by $11,415.03. This surplus apparently is the only thing available to the chapter 7 trustee for distribution to creditors.

Cornmesser asserts that these surplus funds belong to him and are not property

of debtor's bankruptcy estate. He requests that the chapter 7 trustee be directed to turn the funds over to him forthwith instead of administering them.

The chapter 7 trustee opposes Cornmesser's request and insists that the surplus is included in debtor's bankruptcy estate. The surplus, the chapter 7 trustee maintains, was derived from the sale of *debtor's* assets, *not* from the sale of Cornmesser's residence. Although the auction of debtor's assets preceded the closing on the sale of Cornmesser's residence, the proceeds derived from the latter were remitted to Keystone before the proceeds from the former were. The debt owed to Keystone was not fully satisfied until the proceeds from the sale of debtor's assets were applied to the debt. As a consequence, the chapter 7 trustee argues, the excess proceeds are property of the bankruptcy estate.

The trustee's argument is counter-intuitive. A guarantor generally is not obligated to pay until the primary obligor fails to do so. In the case herein, debtor made a partial payment and then plaintiff's obligation came to the fore. His payment was in excess of the debt and, therefore, this excess should be returned to him.

In addition, it is undisputed that debtor had no legal or equitable interest in Cornmesser's residence and consequently had no interest in the proceeds derived from its sale.

In our estimation, it is of no consequence whether the proceeds realized from the sale of Cornmesser's residence were paid to Keystone before or after the proceeds realized from the sale of debtor's assets were. The temporal sequence of these events, in other words, has no relevance in determining who owns any surplus of these proceeds.

What matters instead is that the proceeds derived from the sale of debtor's assets, regardless of when they were paid to Keystone, were not sufficient to satisfy the debt owed to Keystone for which debtor was primarily liable. Satisfaction of the debt was not possible unless proceeds derived from the sale of Cornmesser's residence also were paid to Keystone. The most plausible inference is that any surplus remaining after these respective sale proceeds were paid to Keystone belongs to Cornmesser. Neither debtor nor its bankruptcy estate has any legal or equitable interest in the surplus.

An appropriate order shall issue.

### ORDER OF COURT

**AND NOW,** this **22nd** day of **June,** 2001, for reasons set forth in the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that William Cornmesser is **SUBROGATED** to the rights of Keystone Financial Bank to the extent that, as guarantor, he paid the secured debt owed to Keystone Financial Bank by debtor Cornmesser's, Inc. The chapter 7 trustee shall forthwith **REMIT** to William Cornmesser the **SURPLUS** in the amount of **$11,415.03** remaining after the debt owed to Keystone Financial Bank was fully satisfied.

It is **SO ORDERED.**