**In re FOUR STAR CONSTRUCTION COMPANY, Debtor.**

**BUCKEYE UNION INSURANCE COMPANY, Plaintiff,**

v.

**FOUR STAR CONSTRUCTION COMPANY, et al., Defendants.**

**Bankruptcy No. B91–15401. Adv. No. B92–1344.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Feb. 5, 1993.

Ronald E. Henderson, Cleveland, OH, for debtor/defendant Four Star Const., Inc.

Dean D. Gamin, Thompson, Hine & Flory, Cleveland, OH, for defendant Gilbane Bldg. Co.

Thomas J. Novack, McNamara & McNamara, Columbus, OH, for plaintiff Buckeye Union Ins. Co.

Michael R. Blumenthal, Asst. Atty. Gen., Columbus, OH, for defendant State of Ohio, Dept. of Administrative Services.

Frederick P. Schweig, Kahn, Kleinman, Yanowitz & Arnson Co., Cleveland, OH, for defendant Cleveland State University.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this proceeding the Plaintiff, Buckeye Union Insurance Company (Buckeye), as subrogee, seeks reimbursement for payments it made on certain material payment bonds and performance bonds. Subsequent to the commencement of this proceeding, Buckeye filed its motion for partial summary judgment. Following a hearing on the motion and a review of the relevant pleadings, the factual findings and conclusions of law are set forth below:

### I.

The facts are generally undisputed. In June 20, 1990, Buckeye caused to be issued a bid guaranty and contract bond to co-defendants State of Ohio (State) and the Ohio Department of Administrative Services (ODAS) on behalf of the Defendant–Debtor, Four Star Construction, Inc. (the Debtor). This bond coverage related to a certain construction project in which the Debtor participated and is known as the Trumbull Correctional Institute Bid Phase II Entry and Program Buildings HVAC (The Trumbull Project). Pursuant to terms of the bond, Buckeye paid a total of $26,-863.30 to certain laborers and materialmen, as a result of the Debtor's alleged failure to pay laborers and materialmen who worked on the Project. In addition to the aforesaid amount, Buckeye avers it may be required to pay additional claims in this regard. ODAS is presently holding $96,-

226.50 of approved interim pay requests for the Debtor on The Trumbull Project.

On two other projects, Buckeye, as surety, issued a bid guaranty and contract bond to Cleveland State University (C.S.U.) on behalf of the Debtor which was under contract to replace certain pool filters and pool pipings. (The C.S.U. Project). As a result of the Debtor's alleged failure to pay laborers and materialmen on The C.S.U. Project, Buckeye alleges it paid on one C.S.U. Project a total of $49,187.12 on claims presented with additional claims expected to be filed in the future. On the second C.S.U. Project Buckeye alleges it paid claims which totalled $48,079.58, with additional claims expected in the future. Regarding these two C.S.U. Projects, Buckeye asserts that either C.S.U. or the State of Ohio is holding contract funds in its possession.

On November 6, 1990, Buckeye, as surety, issued a performance and labor and material payment bond to Gilbane Building Company (Gilbane) on behalf of the Debtor. This bond issuance related to a certain construction project, known as the Continental Airlines Flight Kitchen Project, in which the Debtor participated. (The Continental Project). On this project, Buckeye alleges it paid $150,333.46 in claims under its bond obligation due to the Debtor's failure to pay laborers and materialmen. Gilbane is presently holding undistributed contract funds on the Continental Airlines project. It is this particular project which is the subject of the present motion for partial summary judgment sought by Buckeye.

With respect to the Continental Project and by reason of the several payments made by Buckeye under its bond obligations, Buckeye contends: 1) on a theory of equitable subordination it is entitled to be reimbursed from the aforesaid contract funds; 2) it seeks to have this Court declare that the contract funds which are in the possession of Gilbane are trust funds and further declares that Buckeye is a beneficiary thereunder, entitling Buckeye to receive reimbursements from such trusts; 3) Buckeye further seeks to have Gilbane enjoined from disbursing any contract funds either currently payable or which may become payable in the future, until the present litigation is resolved.

Buckeye's motion for partial summary judgment applies to its seventh Complaint cause of action only. That particular allegation posits that the contract funds remaining in possession of Gilbane from the Continental Airline project are subject to an equitable lien of Buckeye and not to the Debtor since Buckeye, as surety, paid the laborers and materialmen once the Debtor failed to do so. Buckeye further alleges that its equitable lien attached at the point in time it issued its payment and performance bonds, as surety, to Gilbane on behalf of work to be performed by the Debtor.

Regarding certain materialmen and laborers subcontracted on the Continental project by the Debtor, it is undisputed that Buckeye paid the claims of said subcontractors. (See, Stipulations 6 and 7.) and that the Debtor failed to do so following submission of their payment claims to the Debtor. (Stipulation 8). Following receipt of their respective claim payments from Buckeye, those subcontractors executed an assignment, release and guarantee in favor of Buckeye. Accordingly, Buckeye seeks recovery of the balance of contract funds on the Continental Airline project which total $79,330.00 and are in Gilbane's possession, while asserting that these funds are not property of the Debtor's estate.

II.

The dispositive issue in this action is whether Buckeye is subrogated to the rights of the Debtor in the contract funds held by Gilbane. A determination of this issue will further decide whether the contract funds are estate property.

■ Under the Bankruptcy Code, estate property is inclusive of all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. 541(a)(1). Among those legal interests are the debtor's choses in action and claims against third parties in existence as of the petition filing date. See, S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted*, 1978 U.S.Code Cong. & Admin.News 5787, 5868.

Those choses in actions and claims clearly include rights of action based upon contract.

■ Under the former Bankruptcy Act a contingent interest in personal property passed to the case trustee only if it was capable of being assigned or was subject to execution seizure, or sequestration. 4A *Collier on Bankruptcy* ¶ 70.37 at 453 (14th ed. 1978). That requirement no longer exists under the Bankruptcy Code. *Id.,* ¶ 541.08[1] (15th ed. 1984). By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time. *In re Ryerson,* 739 F.2d 1423 (9th Cir.1984); H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 [1977], *reprinted,* 1978 U.S.Code Cong. & Admin.News 5963, 6136.

■ In the present matter, Buckeye, as surety, seeks the release of certain funds from a third party (Gilbane), as a subrogee of the Debtor. Buckeye asserts that, by reason of its payments to the Debtor's laborers and materialmen, Buckeye is subrogated to the Debtor's rights to the contract funds in Gilbane's possession. The topic of subrogation is addressed under § 509 of the Bankruptcy Code. Therein, third parties who are liable with the debtor on, or who have secured a claim of a creditor against the debtor, are addressed. This Code provision not only speaks of co-debtors but also includes third parties who are jointly or secondarily liable such as suretys, guarantors, and co-makers. *In re Woerner,* 19 B.R. 708 (Bankr.D.Kan.1982). Section 509 sets forth the rights which are available to suretys, guarantors and co-makers, namely, contribution, reimbursement, or subrogation. See, S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1972) *reprinted,* 1978 U.S.Code Cong. & Admin.News 5787, 5840–5841.

■ Section 509(a) provides for the subrogation of the surety to the rights of the creditor to the extent of any payment made by the surety to the creditor, subject to certain exceptions. The right which applies in a particular situation depends on the agreement between the debtor and the surety and on whether and how payment was made by the surety to the creditor. See, H.R.Rep. No. 595, 95th Cong., 1st Sess. 358 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 73 (1978). Subrogation under 509(a) of the Code is applicable to both partial and full payments of the principal debt made by the surety. *Pearlman v. Reliance Insurance, Co.,* 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). *In re Zaepfel & Russell, Inc.,* 49 F.Supp. 709 (W.D.Ky.1941), *aff'd. sub nom, Farmers State Bank v. Jones,* 135 F.2d 215 (6th Cir.1943). Where the surety pays the principal debt in full, § 509(a) applies only when such payment is made by the surety after commencement of the bankruptcy case. *Collier On Bankruptcy,* ¶ 509.02 at 509–6 (15th ed. 1992). Where a surety pays a debt in full prior to the filing of a bankruptcy petition, § 509(a) is inapplicable as the original creditor has been satisfied prepetition through subrogation outside of bankruptcy law. *Id.,* at 509–7.

Herein, the Debtor's voluntary Chapter 11 petition was filed on September 30, 1991. The parties' Stipulations Exhibits E—U show that each of the subject claims paid by Buckeye were paid after the Debtor's bankruptcy petition was filed. Thusly, the subrogation provisions of § 509(a) are applicable. The Indemnity Agreement entered between the parties was executed prepetition on January 16, 1990. Once paid by Buckeye, each of the subject laborers and materialmen executed assignments of their respective contract rights to Buckeye. See, Stipulation No. 9.

■ The availability of a right to subrogation hinges on (1) the underlying agreement between the debtor and the surety and (2) on whether and in what manner payment was made by the surety to the creditor. *Woerner, supra; In re Missionary Baptist Foundation of America, Inc.,* 12 B.R. 570 (Bankr.N.D.Tex. 1981). Generally, a third party who has secured a claim of a creditor against the debtor by paying such claim is subrogated to the rights of the creditor to the extent of the payment. (*In re Covino,* 12 B.R. 876, 4

C.B.C.2d 1125 (Bankr.M.D.Fla.1981), subject to exceptions noted in § 509(b) and (c). To the extent a surety discharges a debt in full prior to petition filing, § 509(a) is inapplicable. As a general rule, the rights of a creditor are fixed as of the petition filing date. *In re Burka*, 104 F.326 (E.D.Mo. 1900).

Third party nondebtors who claim subrogation rights must satisfy five criteria:

1) Payment must have been made by the subrogee to protect his own interest;

2) The subrogee must not have acted as a volunteer;

3) The debt must be one for which the subrogee was not primarily liable;

4) The debt must have been paid;

5) Subrogation must not work any injustice to the rights of others.

*See, In re Trasks' Charolais*, 84 B.R. 646 (Bankr.S.D.1988); *In re Flick*, 75 B.R. 204 (Bankr.S.D.Cal.1987); *In re DiSanto & Moore Assn., Inc.*, 41 B.R. 935 (N.D.Cal.1984).

 Subrogation is not a fundamental right but, rather, is an equitable consideration and depends upon the particulars of each case. *In re Bugos*, 760 F.2d 731 (7th Cir.1984); *In re Co–Build Cos., Inc.*, 21 B.R. 635, 636 (Bankr.E.D.Pa.1982). *See also*, 124 Cong.Rec. H 11094 (daily ed. Sept. 28, 1978). Additionally, subrogation, where appropriate, occurs automatically subject to certain exceptions provided under § 509(b) of the Code. Where a co-debtor (i.e., surety) elects to pursue a subrogation remedy, no proof of claim is required to be filed by such co-debtor.

An examination of the indemnity agreement (Agreement) between Buckeye and the Debtor must be made to determine whether Buckeye, as surety, acted properly in paying the claims of the laborers and materialmen. If the conditions precedent to payment were met before Buckeye paid on the claims, then it would appear that Buckeye would be subrogated to the Debtor's rights to the retained funds to the extent Buckeye can be satisfied therefrom. Any excess funds in Gilbane's possession under the contract with the Debtor would insure to the benefit of the Debtor's estate.

*The Performance Bond:*

The performance bond which the Debtor and Buckeye executed in favor of Gilbane on the Continental Airline project was in the amount of $527,362.00 (See, Complaint Ex. C). Therein the following language is noted:

... Whenever [Debtor] shall be, *and be declared by [Gilbane] to be in default under the contract,* the obligee (Gilbane) having performed [Gilbane's] obligations thereunder:

(1) *Surety [Buckeye] may promptly remedy the default subject to the provisions of paragraph 3 herein* or;

(2) [Gilbane] after reasonable notice to [Buckeye] may, or [Buckeye] upon demand of [Gilbane] may arrange for the performance of [Debtor's] obligation under the contract subject to the provisions of paragraph 3 herein;

(3) The balance of the contract price, as defined below, shall be credited against the reasonable cost of completing performance of the contract.... *If [Buckeye] arranges completion or remedies the default, that portion of the balance of the contract price as may be required to complete the contract or remedy the default and to reimburse [Buckeye] for its outlays shall be paid to [Buckeye] at the times and in the manner as such sums would have been payable to [the Debtor] had there been no default under the contract....* (*Emphasis added* ).

*The Labor and Material Bond:*

The labor and material payment bond (L & M bond) executed by the Debtor and Buckeye in favor of Gilbane was also in the amount of $527,362.00 on the Continental Airline project. Pertinent language in such bond provided:

... The Condition Of This Obligation is such that if the [Debtor] shall promptly make payments to all claimants as hereinafter defined, for all labor and materials used or reasonably required for use in the performance of this con-

tract ... then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

(2) The named [Debtor] and [Buckeye] hereby *jointly and severally agree with* [Gilbane] that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were finished by such claimant, *may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant and* have execution thereon. (Emphasis added). (Complaint Exhibit C).

As stated in the L & M bond, above, the remedy of unpaid claimants was for such claimants to sue on the bond. This lawsuit remedy was discretionary as the L & M bond language states that the unpaid claimants "may" sue on the bond. It is further noted that Paragraph Four of the L & M bond provides:

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder. (Emphasis added).

*The Contract of Indemnity:*

Among the parties' written stipulations, it was stipulated that the Debtor and Buckeye executed on January 16, 1990, as between themselves, a contract of indemnity (Indemnity Contract) relative to the subject Project. (See, Stip. No. 4, Ex. D). This Indemnity Contract was attendant to the aforementioned bonds executed by these parties in favor of Gilbane for work being performed on the Continental Airline Project (*Id.*, Para. 20). Several provisions of the Indemnity Contract as shown below, are pertinent to a resolution of the present action.

(10) ... *[A]ll money expended in the completion of any such contracts by [Buckeye] ... unless repaid with legal interest by [Debtor] to [Buckeye] when due, shall be conclusively presumed to be a loss by [Buckeye] for which the [Debtor] shall be responsible.*

(12) That [Buckeye] shall have the right to pay, settle or compromise any expense, *claim* or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof *and of the liability of the [Debtor] therefor to [Buckeye].* (Emphasis added).

(14) That should the [Debtor] default in connection with any contracts covered by such bonds or any of the terms of this Indemnity Agreement ... *the [Debtor] assigns to [Buckeye] and [Buckeye] shall have the right to collect and receive all reserve percentages and all money due and to become due the [Debtor] under any such contracts and to hold and apply the same as collateral to this agreement* .... (Emphasis added).

(17) That the *[Debtor] hereby waives all notice of any default, or any other act or acts giving rise to any claim under such bonds,* as well as any and all liability of [Buckeye] under such bonds, *to the end and effect that the [Debtor] shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have been entitled, and notwithstanding any defense that they might have been entitled to make.* (Emphasis added).

At Stipulation No. 7, it is understood that the Debtor's subcontractors listed in Stipulation No. 6 were not paid for labor or materials by the Debtor but, rather, were paid by Buckeye upon presentment of their respective claims to Buckeye. (See, Stip. No. 8) in varying amounts. In view of those stipulations, coupled with the above-referenced Indemnity Agreement provisions, it is clear that Buckeye is properly subrogated to the retainage funds and any other contract funds held by Gilbane for the benefit of the [Debtor].

In applying these factors to the test enunciated under *Burka, supra,* the following findings are hereby made:

The payments made by Buckeye were made with respect to its obligations under the subject bonds and the indemnity Agreement. Buckeye, respecting the payments made, did not act as a volunteer. (See, Indemnity Contract, Paras. No. 10 and 12). Buckeye was not primarily liable on the claims paid. Rather, Buckeye was liable secondarily. The subject claims were actually paid by Buckeye (See, Stipulation No. 8). Thusly, the contract funds in Gilbane's possession are not estate property to the extent of Buckeye's subrogation rights.

Rule 7056, Bankr.R., makes Rule 56, Fed.R.Civ.P. applicable in adversary proceedings. At subsection (c) of this Rule, the following is noted:

> (c) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.... Rule 7056(c), Bankr.R.

To the extent that Buckeye's complaint seeks recoveries from the remaining parties defendant, those matters are state law contract actions which are wholly unrelated noncore matters and have not arisen in a case or proceeding under Title 11 of the U.S.Code. As such, the Court hereby exercises its discretionary abstention power under provisions of 11 U.S.C. 305(a)(1) and under 28 U.S.C. 1334(c)(1), respecting those aspects of Buckeye's complaint. *See, State Bank of Lombard v. Chart House,* 46 B.R. 468 (N.D.Ill.1985).

Other than the Debtor, none of the other parties defendant are debtors in bankruptcy. Buckeye's complaint does not seek to accomplish any remedy against the other codefendants addressed under 28 U.S.C. 157(b), which addresses core proceedings.

Accordingly, in view of the above findings and conclusions, Buckeye's motion for partial summary judgment is granted. Finding that the remainder of this action can be timely and appropriately adjudicated in a state court forum respecting the remaining parties defendant, pursuant to provisions of 28 U.S.C. 1334(c)(1) and 11 U.S.C. 305(a)(1), the Court abstains from adjudicating the balance of this adversary proceeding. Each party is to bear its respective costs.

IT IS SO ORDERED.