### In re FIESOLE TRADING CORP., Debtor.

#### No. 99–47013.

United States Bankruptcy Court, D. Massachusetts.

Oct. 1, 2004.

200

Peter M. Stern, Law Offices of Peter M. Stern, Springfield, MA, for Debtor.

Gary M. Weiner, Weiner and Peskin, P.C., Springfield, MA, for Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is a Motion to Authorize Reimbursement of Excess Tax Payments (the "Motion") filed by Frank A. Rizzo and Andrew Michael Rizzo (the "Movants"). The issue to be determined is whether a "responsible individual" under 26 U.S.C. § 6672 who personally pays to the United States (hereinafter the "IRS") some or all of its claim against the estate may be subrogated to that claim.

### I. FACTS AND POSITIONS OF THE PARTIES

The material facts are not in dispute. On November 12, 1999, Fiesole Trading Corporation (the "Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The case was converted to Chapter 7 on December 3, 2000. On Schedule E of the original petition, the Debtor listed the IRS as an unsecured priority creditor, based on unpaid withholding taxes, but for an unknown amount. The IRS filed a Proof of Claim on April 5, 2000, and filed an amended Proof of Claim on March 8, 2001 for a total of $15,837.67 in unsecured priority claims and $6,703.20 in general unsecured claims (the "IRS Claim").

The IRS Claim was indeed based on taxes withheld from employees' wages, but never remitted to the IRS as required by 26 U.S.C. §§ 3102(a), 3402(a) and 7501(a).[1] These taxes are typically called "Trust Fund" taxes because an employer is deemed to be holding the funds in

---

1. 26 U.S.C. §§ 3102 and 3402(a), part of the Internal Revenue Code (the "I.R.C."), require employers to withhold certain Social Security

and income taxes from employees' wages. I.R.C. § 7501 states that taxes withheld from others, which are to be paid over to the Unit-

"trust."[2] Pursuant to I.R.C. § 6672(a), the IRS may look to an employer's "responsible individuals" for payment of Trust Fund taxes.[3] After filing its claim, the IRS determined the Movants here to be responsible individuals with respect to the Debtor's Trust Fund taxes, seized the Movants' personal income tax refunds and applied the seized amounts to reduce the Debtor's Trust Fund tax liability.[4]

On December 1, 2003, the Final Report of the Chapter 7 trustee (the "Trustee") was approved, and he was authorized to pay the IRS on its claim. After that payment was made, however, the IRS refunded $6,679.38 to the Trustee because the government's claim had been reduced postpetition by the Movants' tax refunds. The Movants followed with the instant Motion, pursuant to which they requested that the Court authorize the Trustee to pay them the funds returned by the IRS.

In their brief supporting the Motion, the Movants characterized their request as one for subrogation to the IRS Claim. The Movants do not contend that they are entitled to subrogation insofar as the IRS Claim enjoyed priority under the Bankruptcy Code. Rather, in accordance with 11 U.S.C. § 507(d),[5] the Movants concede that, at best, they are unsecured creditors, entitled to participate with others to the extent of these returned funds.

While the Trustee has no objection to the relief sought by the Movants, there is existing case law which holds contrary to the Movants' subrogation request. *See, e.g., Patterson v. Yeargin (In re Yeargin)*, 116 B.R. 621 (Bankr.M.D.Tenn.1990).

## II. DISCUSSION

### A. Theories of Subrogation

Pursuant to the subrogation remedy, "one who has been compelled to pay a debt

---

ed States, are held to be a "special fund in trust for the United States."

**2.** Yet, the IRS must credit the employees for the withheld Trust Fund taxes even if the employer fails to remit the taxes to the IRS. *Slodov v. United States*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

**3.** Section 6672 states, in relevant part:
(a) any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over any such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the amount of the tax evaded, or not collected, or not accounted for and paid over ...
I.R.C. § 6672(a) (2004). These individuals ("responsible individuals" or "responsible persons") are typically principals, directors or officers, since these are commonly the persons with the ability and responsibility to decide whether or not to remit the Trust Fund taxes to the IRS.

**4.** The Movants assert that they had worked with an IRS taxpayer advocate and reached

an agreement whereby they would resolve differences with the IRS and, in exchange, the IRS would pay over to the Movants estate funds paid to the IRS. Although proof of this assertion would certainly bolster the Movants' position, the presence or absence of any such agreement and its specific terms are not dispositive of the issues raised in this case.

**5.** 11 U.S.C. § 507(d) provides that "an entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), (a)(6), (a)(7), (a)(8), or (a)(9) of this section is not subrogated to the right of the holder of such claim to priority under such subsection." Although the IRS Claim is granted priority under 11 U.S.C. § 507(a)(8), 124 Cong. Rec. H. 11,112 (Sept. 28, 1978); S. 17,428 (Oct. 6, 1978) ("This category also covers the so-called 'trust fund' taxes, that is income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes"), the Movants are not entitled to the IRS' priority status and may only be subrogated, if at all, to the *amount* of the claim as general unsecured creditors.

which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against the other." *Am. Surety Co. v. Bethlehem Nat'l Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 86 L.Ed. 241 (1941). Although classic examples of entities that have a right to subrogation include guarantors, sureties and endorsers, *Photo Mech. Servs. Inc. v. E.I. Dupont De Nemours Co. (In re Photo Chem. Mech. Servs., Inc.),* 179 B.R. 604, 618 (Bankr.D.Minn.1995), the availability of subrogation is not so limited. *In re Valley Vue Joint Venture,* 123 B.R. 199, 208 (Bankr.E.D.Va.1991). As the Fifth Circuit Court of Appeals has aptly noted:

[Subrogation] is now a mechanism . . . universally applied in new and unknown circumstances . . . [I]t is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.

*Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir.1962).

In the context of a bankruptcy case, an entity's right of subrogation has been examined under either or both of two theories: 11 U.S.C. § 509 and state law doctrines of equitable subrogation. The Movants failed to specify the theory of subrogation upon which they rely.

■ Equitable subrogation has long been recognized under Massachusetts state law, *see, e.g., Jackson Co. v. Boylston Mut. Ins. Co.,* 139 Mass. 508, 2 N.E. 103, 104 (1885), and has been generally described as "the substitution of one person in place of another, whether as a creditor, or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, reme-

dies, or securities." *Id.* In order to succeed on a claim of equitable subrogation under Massachusetts law, five criteria must be met: (1) the party seeking subrogation must have made the payment to protect his or her own interest; (2) the party seeking subrogation must not have acted as a volunteer in making the payment; (3) the party seeking subrogation must not have been primarily liable for the debt; (4) the party seeking subrogation must have paid off the entire debt; and (5) subrogation must not work injustice to the rights of others. *E. Boston Sav. Bank v. Ogan,* 428 Mass. 327, 701 N.E.2d 331, 334 (1998) (citing *Mort v. U.S.,* 86 F.3d 890, 894 (9th Cir.1996)); *see also* 73 Am.Jur.2d Subrogation § 5 (2004).

Section 509 of the Bankruptcy Code also provides a right of subrogation. In relevant part, § 509 provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on . . . a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

(b) Such entity is not subrogated to the rights of such creditor to the extent that—

. . .

(2) as between the debtor and such entity, such entity received the consideration for the claim held by such creditor.

. . .

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section . . . of an entity that is liable with the debtor

on ... such creditor's claim, until such creditor's claim is paid in full ...

11 U.S.C. § 509 (2004).

■ Therefore, pursuant to the relevant provisions of § 509, an entity is entitled to subrogation if: (1) the entity is liable with the debtor on a claim against the debtor (§ 509(a)); (2) the entity has paid all or part of the claim (§ 509(a)); and (3) the entity did not receive the consideration for the claim (§ 509(b)).[6] Furthermore, § 509(c) bars payment to an entity subrogated under § 509 until the creditor's claim has been paid in full.[7]

Courts are not generally in agreement as to whether or to what extent the requirements of equitable subrogation under state law inform the interpretation and application of requirements for subrogation under § 509 of the Bankruptcy Code. *In re Photo Mech. Servs.*, 179 B.R. at 618–19 (providing extensive citations and a clear description of courts' varied treatment of subrogation in bankruptcy). Some courts have either explicitly or implicitly held that the requirements of equitable subrogation must be met before subrogation may be available in bankruptcy cases, even where a party seeks subrogation pursuant to § 509. *See, e.g., Buckeye Union Ins. Co. v. Four Star Const. Co. (In re Four Star Constr. Co.)*, 151 B.R. 817, 820–21 (Bankr.N.D.Ohio 1993); *In re FJS*

*Tool & Mfg. Co., Inc.*, 88 B.R. 866, 870 (Bankr.N.D.Ill.1988); *Bank of Am. v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 89 B.R. 150, 152 (Bankr.D.Colo.1988); *Baxter v. Flick (In re Flick)*, 75 B.R. 204, 206 (Bankr.S.D.Cal.1987); *Towers v. Moore (In re DiSanto & Moore Assocs., Inc.)*, 41 B.R. 935, 938 (N.D.Cal.1984). Many courts have noted that the requirements of § 509 are distinguishable from those of equitable subrogation, but have held or implied that either theory may provide a basis for subrogation in a bankruptcy case. *See, e.g., Wilson v. Brooks Supermarket, Inc. (In re Missionary Baptist Found. of Am.)*, 667 F.2d 1244, 1246 (5th Cir.1982); *Wetzler v. Cantor*, 202 B.R. 573, 577 (D.Md.1996); *Cuda v. Nigro (In re Northview Motors, Inc.)*, 202 B.R. 389, 401 (Bankr.W.D.Pa.1996); *In re Spirtos*, 103 B.R. 240, 243–45 (Bankr.C.D.Cal.1989). Other courts have held that the remedies of equitable subrogation and subrogation under § 509 are separate and distinct, but do not decide whether state law theories of equitable subrogation are available in a bankruptcy case. *See, e.g., Cornmesser v. Swope (In re Cornmesser's, Inc.)*, 264 B.R. 159, 162–63 (Bankr.W.D.Pa.2001); *In re Photo Mech. Servs.*, 179 B.R. at 618–19. Finally, a small number of courts have found that equitable subrogation principles do not apply in bankruptcy cases on account of the codification of subrogation

---

**6.** It is generally held that § 509(b)(2) embodies the principle that one who is ultimately or "primarily" liable on a debt is not entitled to subrogation. *Rubenstein v. Ball Bros., Inc. (In re New England Fish Co.)*, 749 F.2d 1277, 1282 (9th Cir.1984); *In re Valley Vue*, 123 B.R. at 205; *In re Russell*, 101 B.R. 62, 65 (Bankr.W.D.Ark.1989); *Cooper v. Cooper (In re Cooper)*, 83 B.R. 544, 547 (Bankr.C.D.Ill. 1988); 124 Cong. Rec. H. 11,095 (Sept. 28, 1978); S. 17,411–12 (Oct. 6, 1978) ("Section 509(b)(2) reiterates the well-known rule that prevents a debtor that is ultimately liable on the debt from recovering from a surety or co-debtor").

**7.** Although not relevant on the facts of the present case, it is important to note that there are three additional "exceptions" to subrogation under § 509(b)(1). A claim of subrogation under § 509 shall not be granted to the extent that (1) the entity a has been allowed a claim for reimbursement or contribution under § 502; (2) the entity's claim has been disallowed other than under § 502(e); or (3) the entity's claim for reimbursement or contribution has been subordinated pursuant to § 510(a)(1) or (b). 11 U.S.C. § 509(b).

rights under § 509. *See, e.g., Creditor's Comm. v. Mass. Dep't of Revenue,* 105 B.R. 145, 148 (D.Mass.1989); *Cooper v. Cooper (In re Cooper),* 83 B.R. 544, 546 (Bankr.C.D.Ill.1988).

■■■ Bankruptcy is a matter of federal law. U.S. Const. art I, § 8, cl. 4.; *N. Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 84 n. 36, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As such, the Bankruptcy Code prevails over conflicting state law. U.S. Const. art VI, cl. 2; *In re Reisnour,* 49 B.R. 406, 408 (Bankr.N.D. 1985), aff'd 56 B.R. 225. Although state law may control the resolution of some issues in a bankruptcy case,[8] "[w]here the language of Congress indicates a policy requiring a determination that is different from that reached under State law, the Supremacy Clause of the United States Constitution, Article VI, does not permit State law to interfere with the intended result." *United Bank of Ariz. v. Watkins Oil Service, Inc. (In re Watkins Service Oil, Inc.),* 100 B.R. 7, 11 (Bankr.D.Ariz. 1989) (citing *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971)); *In re Nelson,* 59 B.R. 417 (9th Cir. BAP 1985). Because § 509 clearly delineates the requirements for and exceptions to subrogation, this Court will not superimpose state law doctrines to expand or contract the right to subrogation provided for under the Bankruptcy Code.[9]

This Court is therefore guided only by § 509 in determining whether the Movants are entitled to subrogation to the IRS Claim. The Movants will be entitled to subrogation if the following criteria are met: (1) the Movants must have been "liable with the debtor" on the IRS Claim; (2) the Movants must not have received the consideration for the claim; and (3) the IRS Claim must have been paid in full. It is undisputed that the third requirement, that of § 509(c), has been met. The IRS does not contend that there is any remaining balance due on the unpaid Trust Fund taxes. Thus, this Court is left to determine whether the other two criteria are satisfied.

### B. Application

#### 1. Liability with the Debtor

■■■ The Bankruptcy Code makes reference to entities that are "liable with the debtor" in two related provisions. The first, as discussed above, is § 509(a). The second usage is found in § 502(e)(1), which addresses the allowability of claims for reimbursement or contribution.[10] In both instances, the phrase "liable with the debtor" is intended to mean substantially the same thing. Thus, interpretations of liability with the debtor in the context of § 502(e) are equally applicable to determining liability with the debtor for the

---

**8.** *See, e.g.,* 11 U.S.C. § 101(5) (definition of "claim" is broad enough to incorporate state law concepts); 11 U.S.C. § 510(a) (specifically defining enforceability of subordination agreements in terms of enforceability under applicable nonbankruptcy law).

**9.** For instance, whereas equitable subrogation requires the entity seeking subrogation to have paid the claim in full, § 509(a) allows for subrogation as to partial payment of the creditor's claim (although the creditor must be paid in full, from any source, before the subrogated party may receive payment).

**10.** Section 502 deals with the allowance of claims or interests. Subsection (e)(1) disallows claims for reimbursement or contribution of an "entity that is liable with the debtor" on a creditor's claim to the extent that: (1) the creditor's claim is disallowed; (2) the claim for reimbursement or contribution is contingent; or (3) the entity asserting the claim for reimbursement or contribution has asserted a right to subrogation under § 509. 11 U.S.C. § 502(e)(1) (2004).

purposes of § 509(a).[11]

■ Entities may be liable with a debtor in bankruptcy even if they do not fall into one of the traditional categories of guarantor or surety. *Celotex Corp. v. Allstate Ins. Co. (In re The Celotex Corp.)*, 289 B.R. 460, 465–66 (Bankr.M.D.Fla.2003) ("the term 'liable with the debtor' ... connotes a wide spectrum of co-obligors, far beyond the mere guarantor or surety"). As the Tenth Circuit Court of Appeals recently noted, liability with the debtor may be quite broadly defined:

> The word "liable" means "[b]ound or obliged in law or equity." *Black's Law Dictionary* 824 (5th ed.1979). The word "with" means "in addition to." *Id.* at 1436. Consequently, looking to the plain language of [11 U.S.C. § 509] and giving effect to its meaning ... *"an entity ... is liable with the debtor,"* § 509(a), *when the entity is bound or obliged in law or equity in addition to the debtor on "a claim of a creditor against the debtor." Id.*

*CCF, Inc. v. First Nat'l Bank and Trust Co. (In re Slamans)*, 69 F.3d 468, 473 (10th Cir.1995) (emphasis added). Furthermore, liability with the debtor may

exist in non-contractual relationships such as that between joint tortfeasors. *In re Baldwin–United Corp.*, 55 B.R. 885, 890 (Bankr.S.D.Ohio 1985) ("The phrase 'an entity liable with the debtor' is broad enough to encompass any type of liability shared with the debtor, whatever its basis").

An employer's obligation to remit withheld taxes to the IRS arises from I.R.C. §§ 3102(a), 3402(a) and 7501(a). The liability of responsible individuals, however, arises under I.R.C. § 6672 and is deemed a "penalty" under the statute. For this reason, some courts have held that a responsible person has no right to subrogation for amounts paid to the IRS under § 6672, because the "responsible officer's personal liability ... is separate and distinct from the corporation's debt." *In re FJS Tool*, 88 B.R. at 870; *see also In re Yeargin*, 116 B.R. at 623.

Notwithstanding the facial characterization of the § 6672 assessment as a penalty, the Supreme Court, myriad circuit and district courts, and the IRS itself have viewed the § 6672 assessment not as a true penalty, but as an alternate means to collect the *same tax* owed by the corporation.[12] In addition, the legislative history

11. As other courts and legislative history make clear, the parallel nature of § 502(e)(1)(C) and § 509(b)(1)(A) means that the surety or codebtor has a choice; to the extent a claim for contribution or reimbursement would be advantageous ... a surety or codebtor may opt for reimbursement or contribution under 502(e). On the other hand, to the extent that the claim for such surety or codebtor by way of subrogation is more advantageous ... the surety or codebtor may elect subrogation under section 509.
   The section changes current law by making the election identical in all other respects. 124 Cong. Rec. H. 11,094 (Sept. 28, 1978). *See also In re Early & Daniel Indus., Inc.*, 104 B.R. 963 (Bankr.S.D.Ind.1989); *In re Trasks' Charolais*, 84 B.R. 646 (Bankr.D.S.D.1988). Necessarily implied by this ability to make a

choice between § 502(e) and § 509 is that the same entities will qualify as those "liable with the debtor" under both sections.

12. *See Slodov v. United States*, 436 U.S. 238, 243–45, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978); *United States v. Sotelo*, 436 U.S. 268, 275, 98 S.Ct. 1795, 56 L.Ed.2d 275 (1978) (government argued, and the Supreme Court agreed, that assessments pursuant to § 6672 were not a penalty in the true sense, but merely a means of ensuring collection of Trust Fund taxes); *United States v. Pepperman*, 976 F.2d 123, 126–27 (3d Cir.1992); *IRS v. Energy Res., Inc. (In re Energy Res., Inc.)*, 871 F.2d 223, 232–33 (1st Cir.1989); *United States v. Technical Knockout Graphics, Inc. (In re Technical Knockout Graphics, Inc.)*, 833 F.2d 797, 799 (9th Cir.1987); *United States v. Huckabee*, 783 F.2d 1546, 1548–49 (11th Cir.1986);

of § 7501, which requires the collection, withholding and remittance to the government of internal revenue taxes from third person employees, acknowledges that "the *liability* of the person collecting and withholding the taxes to pay over the amount is *merely a debt...*" S.Rep. No. 558, 73d Cong., 2d Sess., 53 (1935) (emphasis added). And, as the Supreme Court noted in *Slodov*, the predecessor to § 6672 was "enacted in 1919 while the *debt* concept prevailed." 436 U.S. at 255, 98 S.Ct. 1778 (emphasis added).

Indeed, the Internal Revenue Manual (the "IRM") states that § 6672 penalties "serve as an alternate means of collecting unpaid trust fund taxes ..." IRM 5.7.3.1 (approved Dec. 1, 2003). Furthermore, it is clearly the policy of the IRS to collect the taxes only once, IRS Policy Statement P–5–60, *reprinted in* IRM 1.2.1.5.14 (approved Feb. 2, 1993),[13] and responsible persons are entitled to an adjustment of their liability if the taxes are paid by the corporation or another responsible person, IRM 5.7.7.7 (approved Dec. 1, 2003).

The effect of IRS policy and practice is such that responsible individuals and the corporation are obligated to pay the same entity on the same debt, even though their obligations arise from a different source. This falls squarely within the meaning of "liable with" under the Bankruptcy Code. *See In re Dow Corning Corp.,* 244 B.R. 705, 715 (Bankr.E.D.Mich.1999) (citing *Pension Benefit Guaranty Corp. v. White Motor Corp. (In re White Motor Corp.),* 731 F.2d 372, 374 (6th Cir.1984)) ("co-lia-

bility exists when each party is obligated to pay the same person for the same benefits even if the obligations of each party arise from a different source."); *see also LTV Steel Co. v. Shalala (In re Chateaugay Corp.),* 154 B.R. 416, 420 (S.D.N.Y. 1993) ("although the source of the liability may differ, each debtor must be liable to the same party for essentially the same claim"); *McAllister Towing v. Ambassador Factors (In re Topgallant Lines),* 154 B.R. 368, 381 fn. 12 (S.D.Ga.1993) (quoting *In re Slamans,* 148 B.R. at 625) (" 'Liable with' means that 'the parties are liable to the same creditor at the same time on the same debt' ").

As the court in *Dow Corning* explained:

> [The] rationale that a creditor is not "liable with the debtor" on an obligation to another creditor if the obligations arise from "independent" sources proves too much.... Every form of guarantee agreement creates an independent obligation on the part of the guarantor. Yet it also makes the guarantor coliable with the primary obligor on the same underlying debt, even though these obligations arise from different contracts.

244 B.R. at 715. Thus, the conclusion that an independent source of an entity's liability renders subrogation unavailable under § 509 clearly thwarts the provision's purpose and intended application, for it would prevent even the ordinary guarantor in some cases from claiming subrogation in a bankruptcy case.

---

*Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970); *Kelly v. Lethert,* 362 F.2d 629, 635 (8th Cir.1966); *Botta v. Scanlon,* 314 F.2d 392, 393 (2d Cir.1963); *In re Thomas,* 222 B.R. 742, 747 (Bankr.E.D.Pa.1998); *Lostocco v. D'Eramo,* 238 Ga.App. 269, 518 S.E.2d 690, 693 (1999); *but see Mortenson v. Nat'l Union Fire Ins. Co.,* 249 F.3d 667, 671 (7th Cir.2001) (holding that assessments

against responsible individual under § 6672 qualified as a "penalty" within the meaning of exclusion provision in corporation's directors' and officers' liability insurance).

**13.** *See also Sotelo,* 436 U.S. at 279–80 n. 12, 98 S.Ct. 1795; *Huckabee,* 783 F.2d at 1548; *Newsome,* 431 F.2d at 745; *Lethert,* 362 F.2d at 635.

Nowhere is the application of the IRS's stated policy on Trust Fund tax liability more clear than in the case *sub judice.* Although the Trustee remitted funds to fulfill the Debtor's liability for unpaid Trust Fund taxes, a portion of this amount, reflecting the portion of the obligation that had been met by the seizure of the Movants' tax returns, was returned by the IRS to the Trustee.

This Court therefore holds that the Movants, as responsible individuals within the meaning of I.R.C. § 6672, are "liable with" the Debtor for the underlying unpaid Trust Fund taxes. To hold otherwise would be to ignore the true nature of the § 6672 penalty as detailed by the courts, I.R.C. legislative history, the IRS and the factual record of this case.

### 2. The § 509(b)(2) Exception

Pursuant to 11 U.S.C. § 509(b)(2), subrogation is unavailable where, "as between the debtor and such entity [seeking subrogation], such entity received the consideration for the claim held by such creditor." As discussed above, this provision has been interpretated as codifying the common-law subrogation requirement that the entity must not have paid off its own debt or a debt for which it was primarily liable. *See* footnote 5, *supra.* In fact, many courts refusing to extend the right of subrogation to an entity seeking reimbursement for penalties assessed pursuant to § 6672 have held that either § 509(b) or the common law rule prevent such subrogation because the responsible individual is merely "discharging a debt in performance of his own obligations," *In re FJS Tool,* 88 B.R. at 871;

*see also In re Yeargin,* 116 B.R. at 623 (responsible individual "has not paid the liability of another, he has only discharged the tax penalty for which he was primarily liable") and the relief from the individual's personal responsibility is often deemed the "consideration" for the claim. *See, e.g., In re Barnes,* 304 B.R. 489, 491 (Bankr. N.D.Ala.2004); *Mason v. Pa. Dept. of Revenue (In re Davis),* 145 B.R. 499, 501–2 (Bankr.W.D.Pa.1992); *Ridge v. Smothers (In re Smothers),* 60 B.R. 733, 735 (Bankr. W.D.Ky.1986). This Court disagrees.[14]

Even if this Court were to accept the "primary" versus "secondary" obligation interpretation of § 509(b)(2), this Court finds that the corporate Debtor is primarily liable for the unpaid Trust Fund taxes, while the liability of Movants as responsible individuals is secondary to the underlying tax obligation. Section 509(b)(2) does not address the direct relationship between the creditor and the potential subrogee. Rather, it looks to compare the obligations of the subrogee to those of the debtor—*"as between the debtor and such entity."* In determining primary versus secondary, or "ultimate," liability between the Debtor (employer) and the entity seeking subrogation (responsible individual), it is clearly the corporate Debtor that is primarily liable for the IRS claim.

Liability under § 6672 is derivative of the underlying corporate obligation to remit withheld trust fund taxes. Responsible individuals are not assessed the penalty until it is determined that the corporation failed to properly pay over the taxes. In addition, "[i]f, after the assertion of the [Trust Fund Recovery Penalty],

---

**14.** To say that an entity has "received the consideration for the claim" or has discharged only its primary liability simply because it pays on a debt for which it has some personal obligation would render § 509 meaningless. Entities are *required* to have some sort of personal obligation to pay the claim before subrogation will be available; even guarantors have "personal liability" for the amounts they promise to pay. Discharging one's liability, therefore, cannot alone be a bar to subrogation.

the corporation pays the delinquent tax, the TFRP assessment will be abated." IRM 5.17.7.1.9 (approved Sept. 20, 2000).

Furthermore, the language of the IRM presents the underlying tax obligation as the primary obligation, while the liability of the responsible persons is considered secondary. In describing the purpose of the penalty, the IRM states that one purpose is to "facilitate the collection of such taxes from *secondary sources*" (i.e., responsible individuals), IRM 5.17.7.1 (approved Sept. 20, 2000) (emphasis added) and to "serve as an alternate means of collecting unpaid trust fund taxes when taxes *are not fully collectible from the company/business* that failed to pay the taxes," IRM 5.7.3.1 (approved Dec. 1, 2003) (emphasis added). And, finally, as the Supreme Court noted in *Sotelo,* 436 U.S. at 279 fn. 12, 98 S.Ct. 1795, "[T]he Comptroller General of the United States wrote: '[The] IRS uses the 100–percent penalty *only when all other means of securing the delinquent tax have been exhausted.*'" Opinion B–137762, n. 10 (May 3, 1977) reprinted in 9 CCH 1977 Stand. Fed. Tax. Rep. ¶ 6614, p. 71, 438.

This Court therefore agrees with those courts which have found § 6672 liability to be secondary to the tax obligation of the employer. *See In re Greenberg,* 105 B.R. 691, 692 (Bankr.M.D.Fla.1989) (a claim against debtor for penalties assessed pursuant to § 6672 "does not represent the primary obligations of these Debtors, but only a secondary obligation"); *Swift v. Levesque,* 614 F.Supp. 172, 178 (D.Conn. 1985) (concluding that "a Connecticut court would view [unpaid trust fund taxes] as a *corporate debt*") (emphasis added); *Reid v. United States,* 558 F.Supp. 686, 688 (N.D.Miss.1983) ("it is clear that the original obligation is that of the employer and section 6672 is utilized only when the primary obligation is not met").

## IV. CONCLUSION

For all of the aforementioned reasons, this Court rules that the Movants are entitled to be subrogated to the IRS claim pursuant to 11 U.S.C. § 509 and may share *pro rata* with other general unsecured creditors. An order will issue in conformity with this Memorandum of Decision.

### ORDER

For the reasons set forth in this Court's Memorandum of Decision of even date, the Motion to Authorize Reimbursement of Excess Tax Payments filed by Frank A. Rizzo and Andrew Michael Rizzo is granted insofar as they are subrogated to the claim of the United States, pursuant to 11 U.S.C. § 509(a), and allowed a general unsecured claim against the estate in the amount of $6,679.38.